Res 7-06
CO Hab Corp
AO 241 amd

**FILED**

MAY − 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Broderick Ford
_____
NAME (Under which you were convicted)


_____
PRISON NUMBER


PLACE OF CONFINEMENT/ADDRESS
1155 First Terrace, N.W.
_____
Washington, D.C. 20001
_____
_____


Broderick Ford
_____ )
(Full Name)          Petitioner

                    v.
Federal Bureau of Prisons,
U.S. Parole Commission
_____ )
                                   )
(Name of Warden, Superintendent, Jailor, or )
authorized person having custody of petitioner) )
                    Respondent     )

Case: 1:07-cv-00848
Assigned To : Kennedy, Henry H.
Assign. Date : 5/8/2007
Description: Habeas Corpus

## PETITION FOR WRIT OF HABEAS CORPUS
### BY A PERSON IN CUSTODY IN THE DISTRICT OF COLUMBIA

### INSTRUCTIONS - PLEASE READ CAREFULLY

1. This petition must be legibly handwritten or typed, and signed by the petitioner.  Any false statement of material fact may serve as the basis for prosecution and conviction for perjury.  All questions must be answered concisely in the proper space on the form.

3. Additional pages are not permitted except with respect to the facts which you rely upon to support your grounds for relief.  No citation of authorities need be furnished.  If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum.

4. Upon receipt, your petition will be filed if it is in proper order and is accompanied by a $5.00 filing fee.  Your check or money order should be made payable to: Clerk, U.S. District Court.

1

Page 2

5.  If you cannot afford to pay the filing fee, you may request permission to proceed in forma pauperis, in which event you must execute the affidavit on the last page, setting forth information establishing your inability to pay the costs. If you wish to proceed in forma pauperis, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution.

6.  Only sentences imposed by one court may be challenged in a single petition. If you seek to challenge sentences entered by different courts, you must file separate petitions as to each court.

7.  When you have completed the form, send the original and one copy to:
    Clerk, United States District Court for the District of Columbia
    Room 1225
    333 Constitution Avenue, NW
    Washington, DC 20001

9.  <u>Petitions which do not conform to these instructions may be returned with a notation as to the deficiency.</u>

## PETITION

1.  (a)  Name and location of court which imposed the sentence (or detention) of conviction you are challenging:
    <u>Superior Court of the District of Columbia, 500 Indiana</u>
    <u>Avenue, N.W., WAshington, D.C. 2001.</u>

2.  (a)  Date of the sentence (or detention): <u>June 1992</u>

3.  Length of sentence: <u>4-12 years</u>

4.  Nature of offense involved (all counts): <u>Possession with intent to Distribute</u>

5.  (a)  What was your plea? (Check one):
    ☐   Not guilty
    ☒   Guilty
    ☐   Nolo Contendere (no contest)
    ☐   Insanity

(b)    If you entered a guilty plea to one count or charge, and a not guilty plea to another count or charge, give details: _____

_____

_____

_____

_____

_____

_____

6.    Have you previously filed any petitions, applications, or motions with respect to this sentence in any court?

    ☐    Yes
    ☒    No

7.    If your answer to Question 10 was "Yes," give the following information:

(a)    (1)    Name of Court: _____

    (2)    Nature of the proceedings: _____

_____

_____

    (3)    Grounds raised: _____

_____

_____

_____

    (4)    Did you receive an evidentiary hearing on your petition, application or motion?

        ☐    Yes
        ☐    No

    (5)    Result: _____

    (6)    Date of result: _____

(b)    As to any second petition, application, or motion, give the same information:

    (1)    Name of Court: _____

    (2)    Nature of the proceedings: _____

_____

_____

    (3)    Grounds raised: _____

_____

_____

_____

_____

    (4)    Did you receive an evidentiary hearing on your petition, application or motion?

        ☐    Yes
        ☐    No

    (5)    Result: _____

      (6)    Date of result: _____

(c)    As to any third petition, application, or motion, give the same information:
      (1)    Name of Court: _____
      (2)    Nature of the proceedings: _____
               _____
               _____

      (3)    Grounds raised: _____
               _____
               _____
               _____

      (4)    Did you receive an evidentiary hearing on your petition, application or motion?
               ☐    Yes
               ☐    No
      (5)    Result: _____
      (6)    Date of result: _____

(d)    Did you appeal to the highest court having jurisdiction for the result of action taken in any petition, application or motion?
      (1)    First petition, etc."
               ☐    Yes
               ☐    No
      (2)    Second petition, etc.:
               ☐    Yes
               ☐    No

      (3)    Third petition, etc.:
               ☐    Yes
               ☐    No

(e)    If you did not appeal from the adverse action on any petition, application, or motion, explain briefly why you did not: _____
_____
_____
_____
_____
_____

8.    State <u>concisely</u> every ground on which you claim that you are being held unlawfully. Summarize <u>briefly</u> the facts supporting each ground. If necessary, you may attach pages stating additional grounds and <u>facts</u> supporting same.

Page 5

A.  GROUND ONE:

    (a)  Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim:  Petitioner asserts that the Respondents have incorrectly computed his sentence and failed to give petitioner time his spent on parole.  Instead of petitioner's "Full Term Date" being June 7, 2007, the Respondents have extended it until June 7, 2016.

See Supporting Brief

B.  GROUND TWO:

    (a)  Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim:  Petitioner asserts that the Respondents violated D.C. Adminiistrative by not notifying petitioner that D.C. Code § 24-431(a) and 28 DCMR § 601.7 had been terminated, suspended or abolished, and that petitioner was no longer entitled to "time while on parole."

See Supporting Brief

C.  GROUND THREE:

    (a)  Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim:  Petitioner asserts that Respondents have incorrectly computed his sentence when he was always in their custody even while on parole.

See Supporting Brief

Page 6

D.    GROUND FOUR:

(a)    Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

9.    If any of the grounds listed in 12A, B, C, or D were not previously presented in any other court, District of Columbia or Federal, state briefly what grounds were not so presented, and give your reasons for not presenting them: _____

_____

_____

_____

_____

_____

_____

_____

_____

10.    Do you have any petition or appeal pending in any other court, either, District of C_____ Federal, as to the sentence (or detention) under attack?

☐    Yes

☒X    No

(a)    If so, give the name and location of the court and case number, if known: _____

_____

_____

_____

11.    Do you have any future sentence to serve after you complete the sentence (or detention) under attack?

☒    Yes

☐    No

(a)    If so, give name and location of court which imposed sentence to be served in the future:

_____

_____

_____

Page 7

(b)   And give date and length of sentence to be served in future: _____

_____

(c)   Have you filed, or do you contemplate filing, any petition attacking the judgment which
      imposed the sentence to be served in the future?
                    ☐   Yes
                    ☐   No




        Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in
this proceeding.

_____
Petitioner's Signature

_____5- 8-07_____
Date

BRIEF IN SUPPORT OF PETITIONER'S PETITION
FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

In support of petitioner's "Writ of Habeas Corpus," he asserts
that in the U.S. Supreme Court case of Jones  v. Cunningham, 371 U.S.
236, 83 S.Ct. 373 (1963), the Court ruled in that:

> "where parole order placed prisoner in custody and control of
> Virginia Parole Board, confined him to particular community,
> house and job at sufferance of parole officer, and required
> that he periodically report to officer and permit officer to
> visit his home and job at any time and follow officer's advice,
> parole prisoner was in "custody" of members of Board."

The Court further stated the following:

> "The Virginia statute provides that a paroled prisoner shall
> be released "into the custody of the Parole Board," and the
> parole order itself places petitioner "under the custody and
> control of the Virginia Parole Board."  And in fact, as well
> as in theory, the custody and control of the Parole Board in-
> volves significant restraints on petitioner's liberty because
> of his conviction and sentence, which are in addition to those
> imposed by the State upon the public generally.  Petitioner
> is confined by the parole order to a particular community,
> house, and job at the sufferance of his parole officer.  He
> cannot drive a car without permission. He must periodically
> report to his parole officer, permit the officer to visit his
> home and job at any time, and follow the officer's advice.
> He is admonished to keep good company and good hours, w
> regularly, keep away from undesirable places, and live a clean
> honest, and temperate life.  Petitioner must not only faith-
> fully obey these restrictions and conditions but he must live
> in constant fear that a single deviation, however slight, might
> be enough to result in his being returned to prison to serve
> out the very sentence he claims was imposed upon him in vio-
> lation of the United States Constitution.  He can be rearrested
> at any time the Board or parole officer believes he has vio-
> lated a term or condition of his parole, and he might be thrown
> back in jail to finish serving the allegedly invalid sentence
> with few, if any, of the procedural safeguards that normally
> must be and are provided to those charged with crime.  It is
> not relevant that conditions and restrictions such as these
> may be desirable and important parts of the rehabilitative
> process; what maters is that they significantly restrain.

Further, in Morrissey v. Brewer, 408 U.S. 471, it was stated at 475:

07 0848
FILED

MAY - 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

"The Court reasoned that parole is only a correctional device authorizing service of sentence outside the penitentiary; the parolee is still in "custody."

The U.S. Supreme Court requires that statutory terms be construed "in their context and with a view to their place in the overall statutory scheme." "Term Of Imprisonment" is one of the most often used phrases in the federal criminal lexicon.  And the phrase does not mean "time served" nor is it "ambiguous."  Substantive criminal statutes routinely state the maximum "imprisonment" a charge carries.  Federal sentencing statutes consistently use "term of imprisonment" to refer to the judge's sentence of imprisonment.  Congress used "term of imprisonment" dozens of times in the Comprehensive Crime Control Act of 1984, of which the good time statute is part, and always used it to mean the judge's sentence, not actual time in custody.  Even under the earlier parole statutes, "term of imprisonment" meant the entire sentence--time in "custody plus time on parole."

The statutes authorizing the U.S. Sentencing Commissi‹ the federal sentencing guidelines themselves, refer to "term of imprisonment" as the sentence imposed by the judge.  Whether viewed standing alone or in context of federal sentencing law, "term of imprisonment" is unambiguous.  As Congress knew, those words have a well-understood, unambiguous meaning.  "Term Of Imprisonment" is unambiguous in its myriad and is not ambiguous.

In every judgment and commitment order entered in federal court, the trial judge sentences the defendant to be "imprisoned" for a term of "whatever the guidelines demand in the particular

-2-

case.  Given the words in the judgment, the plain meaning of
"term of imprisonment" is the period of incarceration to which the
judge sentences a prisoner.

It is not the prerogative of this Court to disregard or change
the language employed by the legislature in enacting statutory
provision.

"Term Of Imprisonment" has a plain meaning intended by the United
States Congress, and is not ambiguous, under the rules of Statutory
Construction.

Congress stated that the **"term of imprisonment"** always meant
**"sentence imposed,"** not **"the time served."**  Congress made it em-
phatically clear that **"term of imprisonment"** meant only the sentence
that the court had imposed upon a defendant, not the **"time served"**
on the sentence, and therefore, when defendants are sentenced in
federal or state courts, they are sentenced to the custody of the
U.S. Attorney General or his authorized representat. . .  . . . .  . . .
Prison, U.S. Parole Commission) to be imprisoned, and **"imprisonment"**
is only one form of **"custody."**

The term **"imprisonment and custody,"** although synoymous, are
not identical.  The term **"custody"** is broader than the term **"im-
prisonment."**  Imprisonment is but one form of custody.  In drafting
the Federal Rules of Criminal Procedure and the Sentencing Guidelines,
the legislature chose to use the term **"custody"** rather than the
more retrictive term **"imprisonment"** . . . As a matter of policy,

-3-

the legislature has chosen to give credit "against the maximum

term and any minimum term . . . for which a prison sentence is

imposed . . . for time spent in custody prior to trial, during

trial, pending sentence and pending resolution of an appeal.

In Commonwealth v. Chiappini, 782 A.2d 490 (Pa. 2001), the

Supreme Court of Pennsylvania stated the following:

> "We recognize that term "imprisonment" immediately conjures
> the image of being involuntarily confined behind bars.
> However, the dictionary definition and common usage is more
> encompassing.  "Imprisonment" is defined as "The act of put-
> ting or confining a man in prison.  The restraint of a man's
> personal liberty; coercion exercised upon a person to prevent
> the free exercise of his powers of locomotion.  It is not a
> necessary part of the definition that the confinement should
> be in a place usualy appropriated to the purpose; it may be
> in a locality used only for the specific occasion; or it may
> take place without the actual application of any physical
> agencies of restraint (such as locks or bars), as by verbal
> compulsion and the display of available force.  Every confine-
> ment of the person is an "imprisonment," whether it be in a
> prison, or in a private house, or even by forcibly detaining
> one in the public streets.  Any lawful exercise or show of
> force by which a person is compelled to remain where he does
> not wish to be.  Black's Law Dictionary (5th ed. 1979)."

The U.S. Supreme Court stated in the Jones case, a most

ficant and important point that aligns with the present case:

> "if he can prove his alegations [t]his custody is in violation
> of the Constitution."  Id., 371 U.S. at 243.

The above statement made by the Supreme Court refers specifi-

cally to petitioner's allegations, that because Respondents have

extended petitioner's sentence based on the denial of "time spent

on parole" while petitioner was in the "custody" of the D.C. Board

of Parole/U.S. Parole Commission, etc., this also violates the

Constitution.

-4-

While petitioner's parole releases him from immediate physical imprisonment, it imposes conditions which specifically confine and restrain his freedom; this is enough to keep him in the custody of the members of the U.S. Parole Commission.

II.  **PETITIONER IS ENTITLED TO TIME SPENT ON PAROLE BECAUSE THE RESPONDENTS FAILED TO COMPLY WITH THE D.C. ADMINISTRATIVE PROCEDURE ACT'S NOTICE REQUIREMENT, AND WHERE D.C. CODE § 24-221.03 & 28 DCMR § 601.7 WERE NEVER REPEALED OR ABOLISHED.**

Petitioner asserts that when a court reviews an agency's construction of the statute which it administers, it is confronted with two questions.  First, always, is the question whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.  If however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, (See generally, R. Pound, The Spirit Of the Common Law 174-175 (1921), as would be necessary in the absence of an administrative interpretation.  Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

The power of an administrative agency to administer a Congressionally created . . . progaram necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress."  Morton v. Ruiz, 415

-5-

U.S. 19, 94 S.Ct. 1055, 1072 (1974).  If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.  Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.  Sometimes the legislative delegation to an agency in particular is implicit rather than explicit.  In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.  INS v. Jong Ha Wang, 450 U.S. 139, 144, 101 S.Ct. 1027, 1031 (1981).

In Chevron, U.S.A., Inc. v. Natural Resources Defense, 467 U.S. 843 (1984) the court stated the following:

> "We have long recongized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations has been consistently followed by the Court whenever a decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations.  See, e.g. National Broadcasting Co. v. United States, 319 U.S. 190, 63 S.Ct. 997 [. . . ] If this choice represents a reasonable accomodation of conflicting policies that were commited to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accomodation is not that Congress would have sanctioned.  United States v. Skimer, 367 U.S. 374, 382, 81 S.Ct. 1554, 1560 (1961).

In light of these well-settled principles it is clear that the Court in the Noble decision misconceived the nature of its role in reviewing the regulations at issue.  The parsing of general

-6-

terms in the text of the statute (D.C. Code § 24-431) will not reveal an actual intent of Congress.  This language is not dispositive; the terms are overlapping and the language is not precisely directed to the question of applicability of a given term in the context of a larger operation.  To the extent any Congressional "intent" can be discerned from this language, it would appear that the listing of overlapping, illustrative terms was intended to enlarge, rather than to confine, the scope of the agency's power to regulate (D.C. Department of Corrections, D.C. Corporation Counsel, now Attorney General of D.C.) and adopt rules in order to effectuate the intent of the "Good Time Credits Act."

In addition, the legislative history of the act forecloses a sharp break with D.C. Code § 24-406 (formerly § 24-206) more importantly, this history plainly identifies the policy concerns that motivated the enactment of "Good Time Credits Act," D.C. Code § 24-221.03, formerly § 24-431.

Significantly, it was not the D.C. Department of Corrections in the 1990's, but rather the D.C. Superior Court, the District of Columbia Court of Appeals, the U.S. District Court, and the U.S. Court of Appeals for the District of Columbia that read the "Good Time Credits Act" statute to flexibly allow the awarding of time "spent on parole" to D.C. offenders after parole had been revoked, and to follow D.C. Law in making parole decisions.  See Johnson v. Williford, 821 F.2d 1279 (7th Cir. 1987); Cosgrove v. Thornburgh, 703 F. Supp. 995; Luck v. D.C. Board of Parole, 996 F.2d 372

-7-

(D.C. Cir. 1993).

When a challenge to an agency construction of a statutory provision, fairly conceptualized, really center on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail.

Judges are not experts in the field, and are not part of either political branch government.  Court must, in some cases, reconcil competing political preferences.  In contrast, an agency to which Congress had delegated policy-making responsibilities may, within the limits of that delegated, properly rely upon the incumbent administration's views of wise policy to inform its judgments.  While agencies are not directly accountable to the people, the Chief Executive is, and is entirely appropriate for this political branch of the government to make such policy choices, resolving the competing interests which Congress itself either inadvertently did not resolve, or intentionally left to be resolved by the agency charged with the administration of the statute in light of everyday realities.  In such a case, federal judges, who have no constituency--have a duty to respect legitimate policy choices made by those who do.  The responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial ones. Our Constitution vests such responsibilities in the political branches.  TVA v. Hill, 437 U.S. 153, 195, 98 S.Ct. 2279, 2302, 57 L.Ed.2d 117 (1978).

-8-

The power of an administrative agency to administer a Congressionally created right necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.  In the area of the District of Columbia Government, the Mayor has long been empowered to promulgate rules and policies, and the power has been given explicitly to the D.C. Corporation Counsel (now the Attorney General of the District of Columbia) and his delegatees (D.C. Department of Corrections, D.C. Board of Parole, etc.).  This agency power to make rules that affect substantial individuals rights and obligations carries with it the responsibility not only to remain consistent with the governing legislation, Federal Maritime Comm'n v. Seatrain Lines, Inc., 411 U.S. 726, 93 S.Ct. 1773 (1973), but also to employ procedures that conform to the law.  See NLRB v. Wyman-Gordon Co., 394 U.S. 759, 764, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969).

The D.C. Administrative Procedure Act was adopted inter alia, that administrative policies affecting individual rights and obligations be promulgated pursuant to certain stated procedures so as to avoid the inherently arbitrary nature of "unpublished ad hoc determinations."  This Act states in pertinent part:

> "Each agency shall separately state and currently publish in the D.C. Register for the guidance of the public--substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency."

> "Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the D.C. Register and not so published.  D.C. Code Title 1 § 1501 et. seq.

-9-

In <u>Lightfoot</u> v. <u>District of Columbia</u>, 339 F.Supp.2d 78, the Court ruled that:

> **"(1) This Court in a Memorandum Opinion and Order dated September 24, 2004, granted Plaintiff's Motion For Partial Summary Judgment and found that Defendants' system of inadequate notice and insufficient process contravened both the fundamental guarantees of "Due Process" and the restrictions created by the DCAPA."**

When "a Due Process liberty" interest is subject to termination, suspension or modification, government must make the **"implicit"** and **"explicit"** duty to provide the stakeholders with transparent guidelines and accountable administration.

If "Due Process" is to mean anything, it is a fundamental guarantee that stakeholders are provided both sufficient notice and fair procedures when governmental discretion mandates abrogation of their rights or privileges. The central purpose of the "Due Process Clause" is to ensure the accountability of the government and its administrative agencies to its citizenry: while discretion is certainly permitted, administrators must provide a public framework for principled decision-making and create clear boundaries for that discretion.

The District of Columbia Administrative Procedure Act ("DCAPA") imposes certain restrictions on the administrative programs created by the District Government. One such requirement reflects the need for **"Notice"** before the adoption, amendment or repeal of agency rules: '[T]he Mayor and each independent agency shall, prior to the adoption of any rule . . . publish in the District of Columbia Register . . . notice of the intended action so as to afford in-

-10-

terested persons opportunity to submit data and views either orally
or in writing.  D.C. Code § 2-505(a).  Publication of the proper
notice must be made "not less than thirty (30) days prior to the
effective date of the proposed adotion, amendment, or repeal.
None of the above was done regarding D.C. Code § 24-221.03 or 28
DCMR § 601.7 by the Respondents, the D.C. Department of Corrections
or the D.C. Board of Parole.

Addressing the **Noble** case, petitioner asserts that the D.C.
Department of Corrections, D.C. Board of Parole, U.S. Parole Co-
mmission and the Federal Bureau of Prisons all circumvented the
D.C. Administrative Procedure Act by not publishing in the D.C.
Register that they had either **"terminated, suspended or modified
D.C. Code § 24-221.03 (formerly D.C. Code § 24-431) and 28 DCMR
§ 601.7,"** which in so doing have violated petitioner's "Due Process
Rights" mainly because as was stated in the DCAPA:

> **"Except to the extent that a person has actual and timely
> notice of the terms thereof, a person may not in any manner
> be required to resort to, or be adversely affected b
> matter required to be published in the D.C. Register and
> not so published.  DCAPA Title 1 § 1501 et. seq.**

The D.C. Court of Appeals has recognized that only when
standards announced in an adjudicative proceeding are binding,
adequately published, and conveyed to the relevant beneficiary
population can they be followed as "rule."  In Washington Hospital
Center v. District Department of Employment Services, 743 A.2d
1208, 1211 (D.C. 1999), the D.C. Court of Appeals found that
"when a new rule is established through individual adjudication,
due process requires that the agency provide notice which is

-11-

reasonable calculated to inform all those whose legally protected interests may be affected by the new principle." The D.C. Court of Appeals found that "Due Process" requires fair adjudication, and . . . fair adjudication requires decision making with reference to ascertainable standards of which the parties have adequate notice." Id. Federal Courts have gone even further in limiting the power of agencies to bypass rule-making. In NLRB v. Wyman-Gordon Co., 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) the Supreme Court specifically rejected an attempt by the National Labor Relations Board to "promulgate new rules in adjudicatory proceedings, without complying with the requirements of the Administrative Procedure Act." Id. at 764, 89 S.Ct. 1426. The Court struck down this attempt to exercise **"quasi-legislative power"** because [t]he rule-making provisions of that Act, which the Board would avoid, were designed to assure fairness and mature consideration of rules of general application. They may not be avoided by the process of making-rules in the course of adjudicatory proceedings.

Just as the government defendants failed to publish their current scheme regarding termination, suspension, or modification in the **"Lightfoot"** case in the D.C. Register using **"notice-and - comment-rule-making,"** the Respondents in this case as well as in the **"Noble"** case failed to publish the termination, suspension, and modification of D.C. Code § 24-221.03 and 28 DCMR § 601.7.

There is nothing in the record in this case or the **"Noble"** case which shows that the Respondents notified petitioner that he was no longer entitled to the benefits of D.C. Code § 24-221.03 and 28 DCMR § 601.7. Where an agency seeks to apply a new standard

of law in adjudication, the party before the agency must have prior notice of the standard. <u>Patel</u> v. <u>INS</u>, 638 F.2d 1199, 1204-05 (9th Cir. 1980).

Finally, petitioner asserts that D.C. Code § 24-221.03 (formerly D.C. Code § 24-431) nor 28 DCMR § 601.7 have ever been repealed, suspended or terminated by Congress, this makes them both still active and applicable to petitioner's situation and still having the force and rule of D.C. law which is applicable to all D.C. prisoners similarly situated as petitioner, especially since the D.C. Department of Corrections, D.C. Board of Parole, the Federal Bureau of Prisons nor the U.S. Parole Commission compiled with the D.C. Administrative Procedure Act's "notice requirement that D.C. Code § 24-221.03 &  28 DCMR § 601.7 had been repealed, terminated, suspended or modified, and that petitioner was not entitled to continue to receive "time spent on parole."

Because of non-compliance with the "Administrative Procedure Act" **"Notice-Requirements,"** any decision which adversely affects prisoners by the use of the **"Noble"** case violates the prisoner's, and in this case, petitioner's "Due Process Rights," and most importantly, the **"Noble"** case cannot even be used or acknowledged. Because the Respondents in this case and the **"Noble"** case did not comply with the strictness of the D.C. Administrative Procedure Act's **"Notice-Requirement"** concerning the modification of D.C. Code § 24-221.03 & 28 DCMR § 601.7 by informing petitioner that they were withholding "time spent on parole," the **"Noble"** ruling has no bearing on this case and as the D.C. ADministrative Pro-

-13-

cedure Act clearly states:

> "Except to the extent that a person has actual and timely
> notice of the terms thereof, a person may not in any manner
> be required to resort to, or be adversely affected by, a
> matter required to be published in the D.C. Register and
> not so published.

Petitioner has never been given any notice by the Respondents,
the D.C. Board of Parole, the D.C. Department of Corrections, or
any other government agency or representative of any of the above
listed agencies that D.C. Code § 24-221.03 & 28 DCMR § 601.7 had
either been repealed, terminated, suspended, modified or abolished,
or that petitioner was not longer entitled to receive "time spent
on parole," and therefore, petitioner is entitled to receive all
"time he spent on parole."

### III.   THE NOBLE v. U.S. PAROLE COMMISSION CASE IS INAPPOSITE TO PETITIONER BECAUSE THE SUPERIOR COURT AND THE DISTRICT OF COLUMBIA COURT OF APPEALS LACKED JURISDICTION TO RULE ON A FEDERAL QUESTION OR A FEDERAL AGENCY.

Prior to the enactment of the Court Reorganization Act in 1970,
the local District of Columbia Courts consisted of an appellate
court and three trial courts: two courts of special jurisdiction
and a third, the District of Columbia Court of General Sessions,
whose jurisdiction was concurrent with this court's jurisdiction
over District of Columbia Code ("D.C. Code") misdemeanors and
petty offenses. Palmore v. United States, 411 U.S. 389, 393 n. 2,
93 S.Ct. 1670, 36 L.Ed.2d 342 (1973)(citing D.C. Code § 11-963
(1967). At that time, this Court had exclusive jurisdiction over
felony offenses prosecuted under the D.C. Code and it therefore
"was filling the role of both a local and federal court." Id.
Pursuant to its plenary power embodied in Article I, Section 8,

Clause 17 of the Constitution (Congress shall have power" [t]o exercise exclusive legislation in all cases whatever, over" the District of Columbia, Id. at 397, 93 S.Ct. 1670.  Congress enacted the Court Reorganization Act and "invested the courts with juris- diction equivalent to that exercised by state court.  Id. at 393 n. 2, 93 S.Ct. 1670.

Thus, when the Court Reorganizatin Act created the Superior Court, it granted virtually exclusive jurisdiction over all criminal cases brought under the D.C. Code § 11-923(b) and its civil juris- diction extended to all matter at law or in equity brought in the District, except those in which exclusive jurisdiction was vested in the United States District Court, D.C. Code § 11-921.  Id.  Three years later, Congress enacted the District of Columbia Self-Govern- ment and Government Reorganization Act, Pub.L. No. 93-198, 87 Stat. 774 (December 24, 1973) and "transferred certain functions previous- ly performed by federal agencies to the District of Columbia govern- ment. . . [and] delegated some of its legislative authority under Article I, Section 8, Clause 17 of the United States Constitution to a new District of Columbia government." Jenkins v. Washington Convention Ctr., 236 F.3d 6, 12 (D.C. Cir. 2001).

Under this new scheme, the D.C. Board was empowered to conduct all parole hearings for offenders who were incarcerated in District of Columbia Department of Corrections facilities while the D.C. Board had an arrangement with the U.S. Commission to "conduct (under D.C. Parole Board  rules) for those D.C. Code offenders being held in federal prison.  Blair-Bey, 151 F.3d at 1038.

-15-

HOwever, with the 1997 enactment of the "Revitalization Act,"
Congress has now placed sole authority over all parole decisions
regarding District of Columbia Code felony offenders convicted
in Superior Court with the U.S. Parole Commission.  Pub.L. 105-33,
111 Stat. 712; D.C. Code § 24-131(a)(2) (2001).  Thus, felony
offenders convicted in Superior Court who are parole eligible or
under parole supervision now have their parole decisions made by
the U.S. Parole Commission, while the Superior Court exercises
such authority over misdemeanants.  D.C. Code §§ 24-131(a)(2)-(3).
Congress' use of its plenary power in exercising control  over
the District of Columbia and its ability to legislate as it deems
appropriate had been discussed by the Supreme Court, which stated
that [n]ot only may statutes of Congress of otherwise nationwide
application be applied to the District of Columbia, but Congress
may also exercise all the police and regulatory powers which a
state legislature or municipal government would have in legislating
for state or local purposes.  Congress 'may exercise within the
state, and may vest and distribute the judicial proceedings before
them, as it may think fit, so long as it does not contravene any
provision of the constitution of the United States." Palmore, 411
U.S. at 397, 93 S.Ct. 1670 (quoting Capital Traction Co. v. Hof,
174 U.S. 1, 5, 19 S.Ct. 580, 43 L.Ed. 873 (1899).

With the enactment of the "Revitalization Act," Congress has
taken its delegation of parole authority away from the District
of Columbia government and has returned it to the federal government.
While the "Revitalization Act has created an odd jurisdictional

-16-

structure for handlling D.C. Code felony offenders who were pro-
secuted in the Superior Court and remain eligible for parole---
prosecution in a local court system with jurisdiction equivalent
to that of a state court, with parole jurisdiction vested in the
federal parole authority--Congress undoubtedly had the authority
to do what it did.

An example of Congress' intent to grant specific courts
jurisdiction over a decision by a federal agency was addressed by
the U.S. Supreme Court in City of Tacoma v. Taxpayers of Tacoma,
357 U.S. 320, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958).  In that case,
the court explained that the Federal Power Act vested exclusive
jurisdiction for the review of orders issued by the Federal Power
Commission in the United States Court of Appeals in the Circuit
where the licensee or public utility to whom the orders are dir-
ected to are located.  16 U.S.C. § 8251(b)(Any party to a proceed-
ing under this chapter aggrieved by an order issued by the Commission
in such proceeding may obtain a review of such order in th
States Court of Appeals for any Circuit wherein the licensee or
public utility to which the order relates or located).

The Supreme Court stated that [t]his statute was written in
simple words of plain meaning and leaves no room to doubt Congress-
ional purpose and intent.  It can hardly be doubted that Congress
acting within its constitutional powers, may prescribe the procedures
and conditions under which, and the courts in which, judicial re-
view of administrative orders may be had.  Id. at 335-36, 78 S.Ct.

-17-

In that same regard, the District of Columbia Circuit has stated
that:

> "[I]t is axiomatice that 'Congress, acting within its consti-
> tutional powers, may freely choose the court in which judicial
> review [of agency decisions] may occur,' quoting City of
> Rochester v. Bond, 603 F.2d 927, 931 (D.C. Cir. 1979)(citing
> City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 336, 78
> S.Ct. 1209, 2 L.Ed.2d 1345 (1958), [and] [i]f Congress makes
> no specific choice of this type in the statute pursuant to
> which the agency action is taken, or in another applicable
> to it, (citation omited), then an aggrieved person may get
> . . . review in federal district court pursuant to the gen-
> eral 'federal question' jurisdiction of that court.

Five Flags Pipe Line Co v. DOT, 854 F.2d 1438, 1439 (D.C. Cir.

1988)(emphasis added).  Therefore, without clear language in the

Revitalization Act regarding where review authority of decisions

of the U.S. Parole Commissin is to occur, this Court should be

unwilling to presume that Congress intended to invest the Superior

Court or the District of Columbia Court of Appeals with jurisdict-

ion over decisions rendered by the U.S. Parole Commission.  To

do so would ignore the axiom that judicial review of decisions of

a federal agency are considered "federal questions" and are pro-

perly cognizable only in the federal courts.  See Califano, 430

U.S. at 105, 97 S.Ct. 980; City of Beloit, 248 F.3d at 654.


This conclusion is consistent with what other members of

this Court have done in cases involving § 2241 habeas corpus

petitions following the enactment of the Revitalization Act,

where the Commission has been a party.  For example, most recently

in Owens v. Gaines, 219 F.Supp.2d 94 (D.D.C. August 29, 2002),

as discused above, Judge Sullivan addressed the government's

position for mandatory exhaustion of District of Columbia habeas

-18-

corpus remedies prior to seeking relief in this Court in the context of the U.S. Parole Commission's supervision of a petitioner's parole. In **Owens, the Court** found the "United States exhaustion argument ignored the fact that D.C. Courts do not have concurrent powers with respect to challenges to U.S. Parole Commission activity. The D.C. Code actually precludes the **"filing"** of habeas corpus petitions in Superior Court that challenge the actions of federal officials. Id. (citing D.C. Code § 16-1901).

In Stokes v. U.S. Parole Comm'n, No. C.A. 00-3075, 2002 WL 193336, *1 (D.D.C. Feb. 4, 2002), Judge Kessler, under circumstances where the petitioner failed to exhaust his local court remedies, stated, in dicta, that while the petitioner was not required to file a writ of habeas corpus because he did not seek actual release from incarceration, but only challenged the date of his scheduled parole hearing, even if the petitioner's claim was an "action as a general habeas corpus petition under District of Columbia Law," it would appear that such petitions must be filed in this Cour      :      '            in the original)(citing D.C. Code § 16-1901(b)("Petitions for writs directed to Federal officers and employees shall be filed in the United States District Court for the District of Columbia"). In Allston v. Gaines, 158 F.Supp.2d 76 (D.D.C. 2001), Judge Friedman stated in a footnote that "[a]s a threshold matter, the government argues that this case should be dismissed because petitioner failed to exhaust his remedies in Superior Court of the District of Columbia. The Court finds this argument unpersuasive and instead considers [petitioner's] petition on the merits. Id. at 78 n 1.

-19-

Finally, in the instant case, the attack by the U.S. Parole Commission, Federal Bureau of Prisons, the D.C. Department of Corrections and the D.C. Board of Parole on adopted D.C. Rules, regulations and policies has placed them under the structure of the D.C. Administrative Procedure Act procedures. The Manual reads:

> **"D.C. Code Regulations: Directives which relate to the public, including prisoners, are published in the D.C. Register and codified in 28 D.C. Municipal Regulations (28DCMR). These directives inform the public of privileges and benefits available; eligibility qualifications, requirements and procedures; and of appeal rights and procedures. They are published in accordance with rules and regulations issued by the Director of the D.C. Register and the D.C. Administrative Procedure Act."**

The District of Columbia Administrative Procedure Act (DCAPA) clearly mandates pursuant to D.C. Code § 2-505(a) that publication of the proper notice must be made "not less than 30 days prior to the effective date of the proposed adoption, amendment, or repeal, and if an individual does not have timely notice to a matter by publishing the change in the D.C. Register, that person cannot be adversely affected by the change. Petitioner was never aff orded this right by the Respondents, and cannot be adversely affected by the change made in D.C. Code § 24-221.03 or 28 DCMR § 601.7.

Furthermore, under the federal statutes, one convicted of a felony does not cease to be a convicted felon when he is paroled. There is no 'remission of penalty' as there is with respect to a pardon. As the statutes indicate, when a person is paroled, he is thereby merely released from confinement in a penal reformatory institution. While on parole, he still remains 'in the "<u>legal custody</u>" of the United States Attorney General/U.S. Parole Comm-

-20-

ission, and under the Commission's control.  IN 39 Am.Jur. page

525, it is stated:

> "A parole, especially such as is contemplated by most statutes
> providing therefore, is distinguishable from a pardon and from
> a conditional pardon.  The parole intended by most of these
> statutes does not end the sentence, and, whatever may be the
> theory of a parole on general principles, those granted under
> some statutes do not even suspend the sentence.  The prisoner
> is not a free man while out on parole, and he continues to
> serve time on his sentence until the expiration thereof.
> Parole statutes simply provide for a different manner of serving
> a sentence than by confinement in a prison."

Parole relates to an admnistrative action taken after the

convict has served a portion of his sentence behind prison walls.

It is not a suspension of sentence, but 'a substitution during the

continuance of the parole, of a lower grade of punishment, by con-

finement in the legal custody and under the control U.S. Parole

Commission with the specified prison bounds outside the prison, for

the confinement within the prison adjudged by the court.' Jenkins

v. Madigan, 21 F.2d 904, 906 (7th Cir.)(cert. denied, 348 U.S. 842,

75 S.Ct. 63, 99 L.Ed. 664 (1954).  The legal procedures providing

for parole are a part of the legislative function of creating a

penological system which encompasses, of course, rules to govern

the care and discipline of inmates.  Parole does not end or in any

way affect a prisoner's sentence, but is a correctional device

authorizing service of sentence outside the penitentiary. People

v. ex rel. Abner v. Kinney, 30 Ill.2d 201, 195 L.Ed. 651, 653

(1964).

In Frazier v. United States, 119 U.S.App.D.C. 246, 339 F.2d

745 (1964), the U.S. Court of Appeals for the District of Columbia

-21-

held that when defendant <u>Frazier</u> escaped from St. Elizabeth's
Hospital, he had only escaped from confinement at St. Elizabeth's
but never escaped from the constructive custody of the U.S. Attorney
General, but this "custody" followed him wherever he went until
the full expiration of his sentence.

It can hardly be assumed that petitioner was not in the
"custody" and under the control of the United States Parole Comm-
ission while he was on parole.  The parole order issued by the
U.S. Parole Commission specifically placed petitioner into the
exclusive custody of the U.S Parole Commission, transferring
"custody" from one designated "U.S. Attorney General designatee,
the Federal Bureau of Prisons, to another designated U.S. Attorney
General designatee, the U.S. Parole Commission, who exercise the
same authority over petitioner while on parole as while
was in "custody" of the Federal Bureau of Prisons.

In sum, petitioner asserts that the "<u>Noble</u>" decision is
clearly inapposite in this case or any other case involving the
use of "<u>Noble</u>" to deny "time spent on parole because the Respondents,
the D.C. Department of Corrections, and the District of Columbia
Government and its agencies failed to comply with the D.C. ADmini-
trative Procedure Acts' "**Notice Requirements**" in notifying petition-
er that a change had been made to D.C. Code § 24-221.03 & 28 DCMR
§ 601.7, which disallowed petitioner from further receiving all
"time spent on parole while he was in the custody of the U.S. Parole
Commission; and (2) that the District of Columbia Court of Appeals
lacked jurisdiction to decide any federal questions "<u>Noble</u>" had

-22-

put before the U.S. District Court or the U.S. Court of Appeals for the District of Columbia. The U.S. Court of Appeals made an egregious error when it certified a federal question back to a local court, the District of Columbia Court of Appeals, a court that lacked jurisdiction to make any decisions regarding any D.C. Code felony offenders pursuant to D.C. Code § 16-1901(b).

## CONCLUSION

It is because the District of Columbia Court of Appeals lacked jurisdiction to make any decisions on a federal question regarding a federal agency because Congress had taken that authority back from the District of Columbia Government with the 1997 enactment of the **"Revitalization Act, Pub.L. 105-33, 111 Stat. 712; D.C. Code § 24-131(a)(2)(2001),"** coupled with the fact that the Respondents, the D.C. Dept. of Corrections, the D.C. Board of the District of Columbia Government all failed to comply with the D.C. Administrative Procedure Acts' **"Notice Requirements,"** and that petitioner was never out of the custody of the U.S. General or his authorized representative, the U.S. Parole Commission, and therefore, petitioner is entitled to **"all time spent on parole."**

In light of the above, petitioner respectfully requests that this honorable court to grant the "Writ of Habeas Corpus" and relief which petitioner seeks.

Respectfully Submitted,

DATE: _5- 8- 07_

_Broderick Ford_
Broderick Ford
1155 First Terrace, N.W.
Washington, D.C. 20001

-23-

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

**I (a) PLAINTIFFS** Broderick Ford

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _11001_
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS** Federal Bureau of Prisons, U.S. Parole Commission

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
1155 First Terrouce, N.W.
Washington, D.C.    (202) 789-5885

Case: 1:07-cv-00848
Assigned To : Kennedy, Henry H.
Assign. Date : 5/8/2007
Description: Habeas Corpus

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☑ 2 U.S. Government Defendant

☐ 3 Federal Question
(U.S. Government Not a Party)

☐ 4 Diversity
(Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

☐ **A. Antitrust**

☐ 410 Antitrust

☐ **B. Personal Injury/Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

☐ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

☐ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

☐ **E. General Civil (Other)** OR ☐ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☑ **G.** *Habeas Corpus/ 2255*<br><br>☑ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ **H.** *Employment Discrimination*<br><br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **I.** *FOIA/PRIVACY ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ **J.** *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ☐ **K.** *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ **L.** *Other Civil Rights (non-employment)*<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ **M.** *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ **N.** *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

*Petitioner asserts that the Respondents have incorrectly computed his sentences and failed to give Petitioner time he spent on Parole.*

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    DEMAND $ _____    Check YES only if demanded in complaint    JURY DEMAND: ☐ YES ⊗ NO

**VIII. RELATED CASE(S) IF ANY** *N.F.*    (See instruction)    ☐ YES ☐ NO    If yes, please complete related case form.

DATE *5.8.07*    SIGNATURE OF ATTORNEY OF RECORD *Baroleh Ford 5-8-07*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

